Filed 3/10/21  P. v. Garnica CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GERARDO VARGAS GARNICA,<br><br>    Defendant and Appellant. | F077526<br><br>(Super. Ct. No. VCF234006)<br><br><br>**OPINION** |

        APPEAL from an order of the Superior Court of Tulare County.  Gerald F. Sevier, H. N. Papadakis* and Gary L. Paden, Judges.†

        Jennifer M. Sheetz for Defendant and Appellant.

        Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Cameron M. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Retired Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

†        Judge Sevier presided over defendant's plea and sentencing hearings and ruled on defendant's 2011 motion to withdraw his plea.  Judge Papadakis ruled on defendant's 2015 petition to dismiss his conviction.  Judge Paden ruled on defendant's 2018 motion to vacate his conviction.

In 2010, defendant Gerardo Vargas Garnica pled no contest to possession of methamphetamine with intent to sell, which subjected him to mandatory deportation and permanent exclusion from the United States without the possibility of reentry. On appeal, he contends the trial court abused its discretion in denying his Penal Code section 1473.7[1] motion to vacate his conviction. He argues his plea counsel was ineffective in failing to inform him of the immigration consequences of his plea and in failing to seek an immigration-neutral plea bargain. Defendant further argues the trial court misunderstood the facts and the law.

Based on the recent amendment to section 1473.7, we requested supplemental briefing. Defendant now argues he is not required to establish ineffective assistance of counsel under the amended law, but needs to show only that he did not understand the immigration consequences of his plea and was prejudiced by that misunderstanding. The People respond that even under the amended statute, defendant has failed to prove prejudicial error.

We reverse the trial court's order denying defendant's section 1473.7 motion to vacate the conviction and remand for a hearing on the merits of the motion, to be considered under the amended law.

## BACKGROUND

On March 4, 2010, defendant was detained when officers executed a search warrant for narcotics at his residence. Six juvenile children were present and residing at the residence. Defendant walked the officers to an outside water heater and told them the location of the narcotics. The officers found several packages of methamphetamine weighing a total of 42 grams and a digital scale behind a piece of drywall. They also

---

[1] All statutory references are to the Penal Code unless otherwise noted.

found $1,140 in cash in defendant's bedroom.  Defendant was transported and booked into the Tulare County jail.[2]

On March 8, 2010, defendant was charged with six counts of felony child endangerment (one for each juvenile victim) (§ 273a, subd. (a); counts 1–6), and one count of felony possession of methamphetamine with intent to sell (Health & Saf. Code, § 11378; count 7).

Defendant was arraigned the same day.  He was assisted by a Spanish language interpreter and was appointed counsel.  He pled not guilty.

### Change of Plea Hearing

On March 26, 2010, defendant appeared with Defense Attorney Timothy Rote from the public defender's office (plea counsel) and, pursuant to a negotiated agreement, pled no contest to count 1 (as amended to include all six juvenile victims) and count 7. Counts 2 through 6 were dismissed.  Defendant was again assisted by a Spanish language interpreter.

At the plea hearing, the following discussion occurred:[3]

> "[DISTRICT ATTORNEY]:  The People are offering Count 1 and Count 7.  Count 1 will include all victims listed in Counts 1 through 6.  So there will be six victims listed on Count 1.
>
> "THE COURT:  All right.  And as I understand it, [defendant] has no record?
>
> "[DISTRICT ATTORNEY]:  That's correct, your Honor.  [¶] … [¶]
>
> "THE COURT:  …  [¶]  [Plea counsel], I'm—as I think about this, I'm changing what I said—I'm changing what I said, and this is my tentative sentence, and this is different than what I indicated:  [It will b]e four years [in] state prison suspended.

---

[2]     These facts are taken from the probation officer's report.

[3]     The record contains no written plea agreement or plea waiver form.

"[PLEA COUNSEL]: Can I talk to you about that? I don't mind putting it on the record, but I would point out to the court that all of the narcotics and the sales materials were in a shed separated from the house where the children lived and played and [ate]—live[d] with their parents.

"THE COURT: I understand, but the accusations are that [defendant] was engaged in the business of selling drugs. I realize he has no record, but he had $1,000 in cash on him, 21 grams of meth, five other baggies with various quantities in them, and there are witnesses who claim that the defendant got a lot of calls. [¶] So under those circumstances, that—that would be my indicated sentence. So we'll trail this.

"[PLEA COUNSEL]: Thank you, your Honor[.]"

After a recess, the following occurred:

"[PLEA COUNSEL]: I've explained to [defendant]—[plea counsel] on behalf of [defendant] again. He's present in custody receiving the assistance of the interpreter in the Spanish language. [¶] I explained to him that—the court's new indicated [sentence] of four years suspended state prison with some local time with that and other things to go along with that. He is still prepared to enter his plea as previously indicated, that would be Count[s] 1 and 7.

"THE COURT: All right. Good morning, [defendant].

"… DEFENDANT: Good morning.

"THE COURT: Now, [defendant], I have stated that should you change your plea to guilty or no contest, that this is what I would do:

"I would sentence you to prison for four years, but I would not actually cause you to be sent to state prison. Instead, you'd be on probation, and that could be for up to five years, and there will be orders made relating to that probation. One of the orders would be that you would serve 365 days in jail. Of course, you'd get credit for whatever time you've served already. There will be fines and other financial assessments that I will be required to make.

"In addition, you'll be required to go on a year[-]long course of at least two hours each week on issues relating to the care of children and related matters, and *if you follow all of the court's orders*, *that's the worst that can happen to you*. However, if you willfully disobey any order that I make, you would go to prison for four years. You're going to be subject to

4.

drug testing.  You're going to be subject to search, and there are a lot of conditions that are going to be placed on you; do you understand?

"… DEFENDANT:  Yes.

"THE COURT:  And insofar as the drug charge is concerned, that's priorable meaning should you commit another offense like it in the future, it would—and you were convicted of that future offense, this would add significant time to that sentence; do you understand?

"… DEFENDANT:  Yes.

"THE COURT:  Do you also understand you'll have to register as a narcotic offender?

"… DEFENDANT:  Yes.  [¶] … [¶]

"THE COURT:  All right.  Also, should it be that you're not a—if you're not a citizen of the United States, this *could* result in your deportation, denial of naturalization, denial of readmission into the United States; do you understand that?

"… DEFENDANT:  Yes.

"THE COURT:  Have you had enough time to talk to your lawyer?

"… DEFENDANT:  Yes.

"THE COURT:  Do you understand that a plea of no contest, if that's the plea you make, it's treated the same way as if you said I'm guilty?

"… DEFENDANT:  Yes.

"THE COURT:  Any questions?

"… DEFENDANT:  No.  [¶] … [¶]

"THE COURT:  Do you also understand that you have a number of other rights.  They include the right to see, hear and challenge any witness who testifies against you.  You have the right to defend yourself in every way that the law allows.  You have the right to bring witnesses to court, present them to the judge or jury, and if those witnesses don't want to come to court, you have the right to make them come to court using the subpoena power of the court?

5.

"… DEFENDANT:  Yes.

"THE COURT:  And do you also understand you don't have to say anything.  If you choose to say nothing, your silence cannot in any way be used against you?

"… DEFENDANT:  Yes.

"THE COURT:  And if you use your rights, the District Attorney's going to have to prove by evidence beyond a reasonable doubt that you're guilty.  If the District Attorney can't do that, you go free; do you understand that?

"… DEFENDANT:  Yes.

"THE COURT:  Have you had enough time to talk to your lawyer?

"… DEFENDANT:  Yes.

"THE COURT:  Have you had a chance to tell him about the possible witnesses you might have and all the information you think is important about your case?

"… DEFENDANT:  Yes.

"THE COURT:  Do you understand this is your decision, not his?

"… DEFENDANT:  Yes.

"THE COURT:  Do you give up your rights?

"… DEFENDANT:  Yes.

"THE COURT:  Is there a factual basis for a plea based upon the investigative reports?

"[PLEA COUNSEL]:  Yes, your Honor.

"[DISTRICT ATTORNEY]:  Yes, your Honor.

"THE COURT:  All right, then, I find that there's an oral, knowing, voluntary, understanding, explicit waiver by [defendant] of his constitutional and statutory rights, [and] there's a factual basis for a plea and that it's freely and voluntarily made with full knowledge of, understanding of and appreciation of the nature and consequences of a plea.

"Sir, what is your answer to Count 1 as amended that on March 4th, 2010, in this county you committed the felony offense of child abuse in that you did willfully and unlawfully … under circumstances likely to injure a child[,] permit [six] children … to be subject to being inflicted with physical harm and that you had care and custody of th[ose] child[ren] and you permitted the child[ren] to be put in a situation where … each one of those children's health was endangered?

"… DEFENDANT:  No contest.

"THE COURT:  And what is your answer to Count 7 that on March 4th, 2010, in this county you possessed methamphetamine unlawfully for the purpose of sale?

"… DEFENDANT:  No contest.

"THE COURT:  All right, very well.  The preliminary hearing is vacated.  This matter is referred to the probation department for an abbreviated report and recommendation."  (Italics added.)

### *Sentencing*

At the sentencing hearing on April 27, 2010, the trial court imposed and suspended execution of four years in prison and granted five years of probation.  In addition, the court ordered defendant to serve 185 days in Tulare County jail on count 1 and 180 consecutive days in Tulare County jail on count 7.  Defendant received credit for 55 days of actual time and 55 days of good conduct credit for a total of 110 days of presentence custody credits.  The probation report stated defendant had no known criminal history or gang affiliation; it did not mention his immigration status.

Defendant did not appeal his judgment.

### *Deportation Proceedings*

Around June 6, 2010, after he was released from jail, defendant was taken into federal custody and transferred to a facility in Arizona for deportation proceedings.

7.

*2011 Motion to Withdraw Plea*

In July 2011, defendant moved to withdraw his plea under section 1018.[4]  In his supporting declaration, he stated that plea counsel never explained the immigration consequences of pleading to possession of methamphetamine with intent to sell. Defendant claimed he would not have pled had he known that doing so would result in deportation and permanent exclusion from the United States; he would instead have sought an immigration-neutral plea.  He also stated:

> "4.  I did not receive any advisements from [plea counsel] or any representative of the Public Defender's Office about the immigration consequences that were to occur from my entering a plea of no contest to the charges.  In fact, I do not recall having any discussion with any attorney about the fact that I *would* be deported and/or my immigration situation could be affected in any manner if I entered a plea of no contest or guilty to the charges.

> "5.  I am now informed that because I entered a plea of no contest to the charges of possession of methamphetamine for sale and child endangerment, I am subject to deportation from the United States and that once deported I will not be readmissible to this country.

> "6.  I am presently in custody and awaiting deportation proceedings in a federal facility in Arizona.

> "7.  Had I discussed the immigration consequences with [plea counsel] I would have fully known that entering the plea of no contest to the charges against me would subject me to being deported and affect readmission to the United States, I would not have entered the plea.  I would have requested [that plea counsel] try to find other solutions that did not have the severe immigration consequences of mandatory deportation."  (Italics added.)

The district attorney's response to defendant's motion argued that plea counsel secured a favorable sentence of 365 days in jail rather than four years in prison, that an

---

**4**  Section 1018 provides:  "On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may … for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."  (§ 1018.)

immigration-neutral plea would not have been possible, that defendant was advised deportation could occur, and that defendant's motion was untimely.  The trial court heard and denied the motion on September 8, 2011.  Defendant was not present at the hearing because he was in federal custody.  The record on appeal does not contain a transcript or written order explaining the ruling; the minute order simply states:  "Motion denied."  In his opening brief, defendant says the motion was denied as procedurally barred[5] and controverted by the section 1016.5 admonition given by the trial court during the plea hearing.[6]  The People do not object to this characterization.

### 2015 Petition to Dismiss Conviction

About four years later, in November 2015, defendant filed, in propria persona, a petition under section 1203.4 to dismiss his conviction for possession of methamphetamine with intent to sell because he had successfully completed probation.[7] In opposition, the district attorney argued defendant failed to pay his fines and thus had

---

[5]     We assume this refers to untimeliness because defendant did not bring this motion before judgment, which occurred when the trial court *imposed* his sentence, even though the court thereafter suspended *execution* of the sentence and granted probation.  And, even if the court instead had suspended *imposition* of sentence and granted probation, defendant did not bring the motion within six months of the grant of probation.  (See § 1018.)

[6]     Section 1016.5 requires that a trial court, before accepting a guilty or no contest plea, advise the defendant on the record as follows:  "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  (§ 1016.5, subd. (a).)

As stated above, before accepting defendant's plea, the trial court advised defendant as follows:  "[S]hould it be that you're not a—if you're not a citizen of the United States, this could result in your deportation, denial of naturalization, denial of readmission into the United States; do you understand that?"

[7]     Section 1203.4, subdivision (a)(1) provides:  "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation …, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty …."

not complied with all conditions of probation, as required by section 1203.4. The trial court denied the petition on December 17, 2015.

*2018 Motion to Vacate Conviction*

About three years later, on February 16, 2018, with new counsel (current counsel), defendant filed the motion underlying this appeal, seeking to vacate his conviction under section 1473.7, a new law that provided: "A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence" that is "legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere" (former § 1473.7, subd. (a)(1), added by Stats. 2016, ch. 739, § 1, p. 5058). Defendant claimed that at the time he pled no contest to possession of methamphetamine with intent to sell, he "was not properly advised or admonished by his [plea counsel] of the adverse immigration consequences (deportation, exclusion or denial of naturalization) resulting from a conviction under that statute." Defendant asserted he would not have pled had he understood these consequences, and therefore plea counsel provided ineffective assistance under the standards of *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).

In support of his motion, defendant submitted the complaint, the docket in the original criminal case, the reporter's transcript from the change of plea hearing, and three declarations.[8] In the first declaration, defendant stated, in part:

> "2. I was born in Mexico on December 2, 1974. I first came to the [United States] in 1997, when I was 23 years old. I subsequently received my legal permanent resident status (LPR) on November 17, 2004.
>
> "3. Because Department of Homeland Security considers my 2010 conviction under Health and Safety Code section 11378 a drug trafficking

---

[8] In his motion, defendant at one point referred to a plea waiver form. As noted, we find no plea waiver form in the record on appeal, and the People do not address the matter at all.

10.

conviction, the conviction has placed me in immediate danger of deportation with a bar to re-entry and naturalization.

"4.  Currently, most of my family resides legally in the [United States], including my four [United States] citizen (USC) children, my USC father, my two USC sisters, my USC brother and my LPR sister.

"5.  I have worked consistently since entering the [United States], including various farming jobs and warehouse packing for a fruit company.

"6.  In 2010, I was represented at my plea [hearing] by the public defender [(plea counsel)].  Prior to my plea, I was never formally interviewed by [plea counsel] regarding the case or my personal information.  I only spoke with [plea counsel] in court.  We did not discuss specific immigration consequences or any other potential non-deportable pleas at court during any of the appearances prior to changing my plea.  Instead, my [plea counsel] told me that if I left the country, I *would likely* have trouble trying to get back in based upon my conviction.  He never mentioned the words 'aggravated felony,' nor did he tell me that I *would definitely* be deportable with a permanent bar to re-entry based upon my plea.  Had I been warned of the actual immigration consequences of my plea, I would not have entered such a plea.  I would have asked my attorney to negotiate for a different deal to mitigate the immigration consequences, or I would have insisted on going to trial—I would have done whatever was necessary to avoid the immigration consequences of an aggravated felony.

"7.  It is extremely important to me to remain in the [United States] because all of my family is here in the [United States].  I do not want to burden my wife and my children with the choice of being with me in Mexico or remaining in the [United States] without me.

"8.  My current [counsel] has told me that if my conviction is vacated, the district attorney might charge me again for the same crime.  I understand that.  However, my [current counsel] has also advised me that I could have plead [*sic*] to a similar, non-deportable offense, carrying the same criminal consequence.  Had I known that the case would constitute a deportable offense under immigration law, I would have definitely insisted that [plea counsel] negotiate an alternate plea that would mitigate the immigration consequences."  (Italics added.)

In the second declaration, defendant's current counsel stated defendant contacted her in October 2017 to ask whether he was eligible for relief under the newly enacted section 1473.7.  Based on a review of defendant's record, current counsel informed

11.

defendant he appeared to be eligible. Defendant retained her services about two weeks later. Current counsel attempted to contact plea counsel twice but received no response. On December 8, 2017, she sent an email to plea counsel. And on January 8, 2018, she mailed a follow-up letter to plea counsel "with specific questions regarding his representation of defendant." In the letter, which was attached to her declaration, current counsel asked:

> "1) Were you aware that [defendant] was a non-citizen during your representation of him? Did you note his status? If so, did you request an immigration consultation after receiving the initial offer from the district attorney?
>
> "2) Did you advise [defendant] regarding the immigration consequences of his conviction prior to the plea? If so, what did you advise [defendant]?
>
> "3) In negotiating the plea bargain on [defendant's] behalf, how many discussions did you have with the district attorney outside of court? What counter offers, if any, did you make?"

The third declaration was provided by Christopher Todd (immigration counsel), an immigration attorney who practiced immigration law before the Executive Office for Immigration Review (including the immigration court and the Board of Immigration Appeals), the United States Citizenship and Immigration Services, the Department of State, and the Ninth Circuit Court of Appeals. He had been practicing immigration law since 2002 and advising criminal defense attorneys on the federal immigration consequences of potential California and federal convictions since 2003. The majority of immigration counsel's practice was devoted to "immigration issues surrounding non-citizens who have been convicted of criminal offenses, in particular defending immigrants in removal proceedings based upon California state convictions."

For the prior 15 years, immigration counsel had provided immigration consultations by contract to the conflict panel in Sacramento. In the course of providing consultation, training, and expert services in California, immigration counsel had never encountered a district attorney's office that specifically prohibited immigration-neutral

12.

plea bargains. He had served as an expert witness in post-conviction immigration cases throughout the state and was personally aware of successful immigration-neutral resolutions achieved in cases involving felony convictions in Alameda, Contra Costa, Los Angeles, Riverside, San Francisco, Santa Clara, San Mateo, Shasta, Solano, Sonoma, Sutter, and Yolo Counties. In immigration counsel's experience, "district attorney's offices are generally open to negotiating immigration[-]neutral pleas, if the interests of justice are equally served (the criminal consequences are the same)."

As to best practices when negotiating plea bargains, immigration counsel explained that many counties had implemented procedures to determine the immigration consequences of potential convictions. Sacramento's conflict panel, for example, required defense attorneys to complete an intake questionnaire with each client and to obtain an immigration consultation with immigration counsel's firm for every noncitizen client. In providing the consultation, the client's immigration status and criminal charges were first identified. A detailed memo was then prepared, explaining the potential immigration consequences of the charged offenses and recommending alternative plea options, supported by the facts, that would mitigate or eliminate the immigration consequences. When recommending alternative plea options, immigration counsel's firm focused on those with equal or greater criminal consequences that were supported by the facts in the record. For example, defendants charged with possession of a controlled substance for sale have historically been advised to " 'plea[d] up' " to transportation or to negotiate a plea to a controlled substance offense that does not name the substance itself in the charging document or when entering the plea, to "mitigate the drastic immigration consequences associated with aggravated felony and controlled substance convictions." "Unfortunately, if defense attorneys do not properly investigate and interview their clients, they are unable to determine their immigration status and adequately serve them in negotiating a plea that is in their clients' best interest."

Immigration counsel then addressed the specific consequences of and alternatives to defendant's 2010 plea bargain. While child endangerment was a deportable offense, defendant nevertheless remained eligible for " 'Cancellation of Removal'—a form of discretionary relief from removal." Possession with intent to sell, however, was "the worst possible disposition of the case with respect to adverse immigration consequences" because—as an aggravated felony, a controlled substance violation, and a drug trafficking offense—it subjected defendant to deportation and permanent exclusion from the United States and left him ineligible for any form of discretionary relief (such as cancellation of removal, voluntary departure, political asylum, and withholding of removal). Although defendant's family members are citizens and his wife could otherwise seek an immigrant visa on his behalf, "with this conviction he is permanently ineligible for a new green card, or any other form of immigrant visa." Should defendant, as an aggravated felon, fail to comply with an order of deportation or return to the United States without express permission from the Department of Homeland Security, he could be criminally prosecuted and face a federal prison sentence of up to 20 years. Because of these consequences, "[a]n aggravated felony is the immigration equivalent of a life sentence without parole."

Immigration counsel concluded defendant could have avoided an aggravated felony conviction by pleading to transportation of a controlled substance, rather than possession of methamphetamine with intent to sell, because transportation was not an aggravated felony in 2010 when defendant entered his plea. Alternatively, he could have avoided an aggravated felony conviction by pleading to a new charge of possession with intent to sell that "did not name the specific controlled substance. In such a case, if the complaint tracks the language of [the] statute without specifying the actual substance, and the substance is not named in the judicially-noticeable portion of the record of conviction (complaint, plea colloquy, judgment), then it would not be a controlled substance offense … nor would it be an aggravated felony." Immigration counsel explained these were

14.

"oft-used alternatives, as they both carry the same criminal consequences while mitigating or eliminating the immigration consequences."

The district attorney opposed defendant's motion, arguing defendant had failed to show either error by plea counsel or prejudice to himself. The district attorney did not submit any evidence in opposition to the motion.

On April 6, 2018, the trial court heard and denied the motion. The court did not provide a written explanation of the ruling. Following is the entirety of the hearing on the motion, except for very brief opening and closing comments:

> "THE COURT: I've read the motion. I've read the response. I've read the reply to the motion for the opposition, and I've also reviewed the file. [Current counsel], were you aware that in July of 2011 this exact same motion was filed?
>
> "[CURRENT COUNSEL]: It wasn't this exact same motion.
>
> "THE COURT: It was.
>
> "[CURRENT COUNSEL]: No, it was—at the time there was no motion to bring an ineffective assistance of counsel claim, so he couldn't have brought this claim because it was just created this last year.
>
> "THE COURT: No. I can tell you I've been through the file. July 26th, 2011, the defendant filed a motion to vacate the plea. He claimed his [plea counsel] was ineffective because he never discussed immigration consequences, and the subject—and the defendant was subject to deportation proceedings because of his plea. That case was—that motion was ruled on September 8, 2011, while your client was in custody in Arizona. The motion to vacate and set aside the plea was denied.
>
> "[CURRENT COUNSEL]: Right, Your Honor. That was made under Penal Code Section 1016.5. [¶] So last year the [L]egislature passed a new law and it's—that's what this motion has brought. It's Penal Code Section 1473.7, so at the time that he was in deportation proceedings, there was actually, in fact, no motion available to bring in ineffective assistance of counsel.
>
> "And in part the motion was denied because that was the case, and that he was bringing a motion to vacate under [section] 1016.5, and there was proof that he was advised at the time of the plea. So this is not about

15.

whether or not he was advised of the [section] 1016.5 admonition. That's in the record. There's no question about that.

"The issue here is whether or not his [plea counsel] tried to get him an alternate plea, like transportation, which he could have been charged with given the circumstances, and he could have pled to, which is actually a more aggravated offense than possession for sale. So he could have suffered the three-year mandatory recidivism potential had he pled to that. He could have faced five years in prison, which is a year more than possession for sale. So there are reasons why a district attorney might consider that as an alternate plea. Also that there [was] a factual basis for it.

"There's a case, *People vs. Bautista* [(2004) 115 Cal.App.4th 229], that was cited in the motion that basically stands for the proposition that failure to negotiate or attempt to negotiate upwards, or to a more aggravated offense, is ineffective assistance of counsel per se, and it also goes along with *People vs. Soriano* [(1987) 194 Cal.App.3d 1470], which is the 1987 case where the counsel failed to, at sentencing, attempt to get a sentence that would allow the immigrant defendant to put on an immigration belief [*sic*] case, and that's the same here.

"This is not a [section] 1016.5 [motion]. There's no issue that [defendant] was advised pursuant to the required language. That's not what we're trying to say. The issue is, and the District Attorney's office has failed to acknowledge this in the opposition, is there is preexisting law regarding what was required of his [plea counsel] at the time, which existed not only before this, but definitely existed under federal law at the time of his plea.

"And so not only does *Padilla vs. Kentucky* [(2010) 559 U.S. 356] apply to this case, which is again—couldn't be brought up at the time of his deportation proceedings, but can be now because of the law change last year. But also there was California law that had been in place for many years prior to *Padilla vs. Kentucky*, which directly impacted this case. Most importantly, the *People vs. Bautista*[, *supra*, 115 Cal.App.4th 229] case because there's no explanation as to why [plea counsel] wouldn't have tried to plea[d] up to transportation, and why the District Attorney wouldn't accept that had he been properly advised.

"THE COURT: You're aware of five other charges [that] were dismissed pursuant to the plea? It seems to me [plea counsel]—in terms of not taking into consideration immigration consequences, [plea counsel] did a pretty good job for your client.

16.

"[CURRENT COUNSEL]:  Right.  That's why it's even more likely that the District Attorney—because he negotiated all of these other dismissals … would have agreed to this.  [¶]  So as part of the negotiations he had to have—he was required to consider the immigration consequences at that time.  He failed to.

"THE COURT:  Tell me … if I were to grant your motion, the case is now eight or nine years old, isn't there a certain amount of prejudice to the People to try to go back and relitigate this matter?

"[CURRENT COUNSEL]:  No, because the charges are reinstated.

"THE COURT:  You don't think they might have witnesses or issues with witnesses or problems with that on a case that's almost a decade old?

"[CURRENT COUNSEL]:  Your Honor, to be fair, I've actually contacted the District Attorney's office and have agreed that he would plead to transportation at this time.  That's how much the immigration consequences mean to him.  And I don't think that there's significant prejudice because, quite honestly, a lot of these cases can be brought years later because the witnesses are the police officers, and—I don't know.  I didn't look into whether or not these police officers still work for the County, but … the [L]egislature took that into account in passing this law last year and that's why one of the aspects is due diligence and he has been diligent.  He tried to bring this before it was even right, before the law even existed, and he's bringing it now.

"THE COURT:  [District Attorney]?

"[DISTRICT ATTORNEY]:  Your Honor, I think our argument is fairly well laid out in our opposition in our moving papers.

"I would just like to point out for the Court that under [section] 1473.7 there are only two circumstances under which a defendant may be allowed to withdraw his plea.  [¶]  The first is if the conviction or sentence is legally invalid due to a prejudicial error stemming from the moving party's ability to meaningfully understand and defend against or knowingly affect the adverse immigration consequences of the plea.  The second issue is newly discovered evidence of actual innocence, and I don't think we have that issue here.

"We're specifically addressing the issue as to whether the conviction was legally invalid due to the defendant's inability to understand and defend against or knowingly accept the potential immigration consequences.

17.

"Page 2 of our pleading papers, Your Honor, we've cited to the record. It's very clear. On March 26[, 2010,] the Court specifically asked the defendant, and indicated to the defendant, 'If you're not a citizen of the United States this *could* result in your deportation, denial of naturalization, denial of readmission to the United States,' and specifically asked the defendant at that time, 'Do you understand that?' And the defendant's response was 'Yes.' The Court then followed up with a question, 'Have you had enough time to talk to your [plea counsel]?' The defendant again responds with the affirmative, 'Yes,' that he has had opportunity to discuss these issues with his [plea counsel].

"So you know, in terms of this kind of very speculative argument that there wasn't the opportunity for the defendant to meaningfully discuss this issue with [plea counsel], to consider the immigration consequences of his plea, I think we have to take the transcript at face value that, in fact, there was a discussion that went on between the defendant and his [plea counsel] at the time, and the fact that he was advised not only by his own [plea] counsel but by the Court that there *could potentially* be adverse immigration consequences to his plea.

"So I think we need to take the record at face value and to speculate or to try to go back, set the clock back eight years to determine whether or not there may have been an alternate plea that could potentially have avoided immigration consequences for the defendant, and whether the District Attorney at that time might have been willing to consider that, I think is at this point, eight years down the road, pure speculation by [current counsel], and for the Court to make a finding would similarly be pure speculation at this point. [¶] So I think, Your Honor, based upon the facts of the case, the statute involved, I just don't think that there's any basis at this point for granting the defendant's motion under [section] 1473.7. [¶] If the Court has any specific questions, I'll be happy to address them; otherwise, we would submit on our moving papers.

"THE COURT: [Current counsel.]

"[CURRENT COUNSEL]: If I may. [¶] So the actual language that the District Attorney just cited in the plea colloquy is actually an issue that has been decided by this Court in California since 1987 in the defendant's favor. [¶] So providing just the admonition under Penal Code Section 1016.5, which is what was in the record, has actually been found to be affirmative misadvice since *In re[ Resendiz* (2001) 25 Cal.4th 230, overruled on another ground in *Padilla v. Kentucky*, *supra*, 559 U.S. at pp. 370–371)]. That was in 1987. [¶] This is still—or 2001. Sorry.

18.

"This is still ineffective assistance of counsel. It was brought up again last year in the *People vs. Patterson* [(2017) 2 Cal.5th 885] case, and the California Supreme Court reaffirmed that that is ineffective assistance of counsel. It's misadvice, especially when it's an obvious felony as it was in this case. And in addition that's the—this is the exact same case that was *Padilla vs. Kentucky*[, *supra*, 559 U.S. 356]. And [in] *Padilla vs. Kentucky* the same language is also provided to the defendant at the time of the plea by his counsel.

"The [United States] Supreme Court found that was affirmative misadvice because it was an aggravated felony. He should have been advised of the fact that it was an aggravated felony. The broad language that is provided under [section] 1016.5 does not specifically advise immigrant defendants of that. [¶] This is the law of the land at the federal level. It's the law of the land at the California level. It has been the law of the land for many years.

"The language that is cited, and I addressed it in the original motion and in the opposition, is completely the opposite of what the District Attorney's arguing.

"This evidence stands as a preponderance of evidence that [defendant] was actually actively misadvised. He was never told that this was an aggravated felony, it *would* result in his mandatory deportation and a permanent bar to his reentry. That was not part of the discussion. It should have been. It was required to be by law.

"THE COURT: The motion is denied." (Italics added.)

On May 18, 2018, defendant filed a timely notice of appeal. (See § 1473.7, subd. (f).)

## DISCUSSION

### I.    Law

In 2018, when defendant filed his motion under section 1473.7, that provision was thought to require a noncitizen criminal defendant to demonstrate that ineffective assistance of counsel was the cause of his failure to meaningfully understand the negative immigration consequences of his guilty (or no contest) plea.[9]  While defendant's appeal

---

**9**    We use only the male pronoun for simplicity and because defendant is male.

19.

was pending, however, the Legislature amended section 1473.7 to clarify that a defendant can obtain relief under the statute *without* proving ineffective assistance of counsel.

This change in law is the most recent legislative manifestation of a long trend of increasing procedural safeguards for noncitizen criminal defendants, "based on decades of changes and advancements within the legislative, executive, and judicial branches of government, at both the state and federal levels." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 866 (*Mejia*).)

### A. Early Developments

Initially, the law considered adverse immigration effects to be indirect or collateral consequences of a guilty plea, and thus did not require trial courts to advise defendants of those consequences before taking their pleas. (*Mejia*, *supra*, 36 Cal.App.5th at pp. 866–867.) But in 1977, the Legislature enacted section 1016.5 (added by Stats. 1977, ch. 1088, § 1, p. 3495) to require trial courts to advise criminal defendants as follows: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged *may* have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a), italics added.) Defense attorneys, however, were under no particular duty to discuss the potential adverse immigration consequences of pleading guilty with their clients, although an affirmative misrepresentation about immigration consequences could constitute ineffective assistance. (*Mejia*, at p. 867.) Unless a defendant actually inquired about immigration consequences, "[plea] counsel could generally rely on the court's immigration advisement." (*Ibid.*)

In 2010, in *Padilla v Kentucky*, *supra*, 559 U.S. 356 (*Padilla*), the United States Supreme Court concluded defense attorneys do have a duty to understand and accurately explain to their clients the immigration consequences of their guilty pleas.[10] (*Padilla*, at

---

[10] *Padilla* was decided on March 31, 2010, five days after defendant's plea but before his conviction became final; thus, defendant is entitled to the benefit of *Padilla*'s holding. (*Chaidez*

20.

pp. 367–368.) The court noted: "The landscape of federal immigration law has changed dramatically over the last 90 years. While once there was only a narrow class of deportable offenses …, immigration reforms over time have expanded the class of deportable offenses…. The 'drastic measure' of deportation or removal … is now virtually inevitable for a vast number of noncitizens convicted of crimes." (*Id*. at p. 360.) The court concluded that when "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the [immigration] consequence [of the defendant's] conviction" (*id*. at p. 368), such that "the deportation consequence is truly clear …, [plea counsel's] duty to give correct advice is equally clear" (*id*. at p. 369).[11]

A few years later, in *People v. Martinez* (2013) 57 Cal.4th 555, the California Supreme Court reiterated the gravity of immigration consequences: "That a defendant might reject a plea bargain because it would result in deportation, exclusion from admission to the United States, or denial of naturalization is beyond dispute. The Legislature so recognized when it enacted section 1016.5. [Citation.] This court has found that 'criminal convictions may have "dire consequences" under federal immigration law [citation] and that such consequences are "material matters" [citation] for noncitizen defendants faced with pleading decisions.' [Citation.] '[A] deported alien who cannot return "loses his job, his friends, his home, and maybe even his children, who must choose between their [parent] and their native country." ' [Citation.] Indeed, a defendant 'may view immigration consequences as the only ones that could affect his calculations regarding the advisability of pleading guilty to criminal charges' [citation], such as when the defendant has family residing legally in the United States. 'Thus, even

---

*v. United States* (2013) 568 U.S. 342, 344 [*Padilla* does not apply retroactively to defendants whose convictions became final before *Padilla* was decided].)

[11] The duty to advise is more limited when the deportation consequences are unclear or uncertain, in which case "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." (*Padilla*, *supra*, 559 U.S. at p. 369, fn. omitted.)

before the Legislature expressly recognized the unfairness inherent in holding noncitizens to pleas they entered without knowing the consequent immigration risks [citation], we held that justice may require permitting one who pleads guilty "without knowledge of or reason to suspect [immigration] consequences" to withdraw the plea.' " (*Id.* at p. 563.)

Then, effective January 1, 2016, the Legislature codified and expanded *Padilla* by enacting sections 1016.2 and 1016.3 (added by Stats. 2015, ch. 705, §§ 1, 2, pp. 5366–5367).[12] In section 1016.2, the Legislature declared its findings and noted: "Once in removal proceedings, a noncitizen may be transferred to any of over 200 immigration detention facilities across the country. Many criminal offenses trigger mandatory detention, so that the person may not request bond. In immigration proceedings, there is no court-appointed right to counsel and as a result, the majority of detained immigrants go unrepresented. Immigration judges often lack the power to consider whether the person should remain in the United States in light of equitable factors such as serious hardship to United States citizen family members, length of time living in the United States, or rehabilitation." (*Id.*, subd. (f).) The Legislature recognized that "[t]he immigration consequences of criminal convictions have a particularly strong impact in California. One out of every four persons living in the state is foreign-born. One out of every two children lives in a household headed by at least one foreign-born person. The majority of these children are United States citizens. It is estimated that 50,000 parents of California United States citizen children were deported in a little over two years. Once a person is deported, especially after a criminal conviction, it is extremely unlikely that he or she ever is permitted to return." (*Id.*, subd. (g).)

The Legislature also understood that immigration-neutral alternative pleas are often a viable option: "With an accurate understanding of immigration consequences,

---

**12**    Section 1016.2, subdivision (h) provides: "It is the intent of the Legislature to codify *Padilla v. Kentucky*[, *supra*, 559 U.S. 356] and related California case law and to encourage the growth of such case law in furtherance of justice and the findings and declarations of this section." (Italics added.)

many noncitizen defendants are able to plead to a conviction and sentence that satisfy the prosecution and court, but that have no, or fewer, adverse immigration consequences than the original charge." (§ 1016.2, subd. (d).) "Defendants who are misadvised or not advised at all of the immigration consequences of criminal charges often suffer irreparable damage to their current or potential lawful immigration status, resulting in penalties such as mandatory detention, deportation, and permanent separation from close family. In some cases, these consequences could have been avoided had [plea] counsel provided informed advice and attempted to defend against such consequences." (*Id.*, subd. (e).)

As a result of these findings, the Legislature imposed obligations on defense attorneys and prosecutors. Section 1016.3 requires criminal defense attorneys to "provide accurate and affirmative advice about the immigration consequences of a proposed disposition, and when consistent with the goals of and with the informed consent of the defendant, and consistent with professional standards, defend against those consequences." (§ 1016.3, subd. (a).) Prosecutors, "in the interests of justice, and in furtherance of the findings and declarations of Section 1016.2, shall consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution." (*Id.*, subd. (b).)

The next year, the Supreme Court acknowledged in *People v. Patterson*, *supra*, 2 Cal.5th 885 (*Patterson*) that *Padilla* requires—when mandatory deportation is a certain result of a guilty plea—that a criminal defense attorney must accurately advise the defendant of that consequence before he enters his plea. (*Patterson*, at p. 898.) *Patterson* concluded that "[t]he generic advisement under section 1016.5 is not designed, nor does it operate, as a substitute for such advice." (*Ibid.*) The court explained: "A defendant entering a guilty plea may be aware that some criminal convictions *may* have immigration consequences as a general matter, and yet be unaware that a conviction for a specific charged offense *will* render the defendant subject to *mandatory* removal. Thus,

as we have previously noted in a different context, the standard section 1016.5 advisement that a criminal conviction 'may' have adverse immigration consequences 'cannot be taken as placing [the defendant] on notice that, owing to his particular circumstances, he faces an actual risk of suffering such.' [Citation.] And for many noncitizen defendants deciding whether to plead guilty, the 'actual risk' that the conviction will lead to deportation—as opposed to general awareness that a criminal conviction 'may' have adverse immigration consequences—will undoubtedly be a 'material matter[]' that may factor heavily in the decision whether to plead guilty."[13] (*Patterson*, at pp. 895–896, italics added.)

## B. Recent Developments

### 1. Section 1473.7

Effective January 1, 2017, the Legislature further expanded the safeguards for noncitizen criminal defendants by enacting section 1473.7 (added by Stats. 2016, ch. 739, § 1, pp. 5058–5059), the basis of the motion at issue in this case. The new law afforded a defendant who pled guilty without understanding the immigration consequences of his conviction a chance to have that conviction vacated if he could show by a preponderance of the evidence that his conviction was "legally invalid due to a prejudicial error damaging [his] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (Former § 1473.7, subds. (a)(1), (e)(1).) "Courts routinely interpreted the new statute to mean that in order to vacate a conviction, a [defendant] had to prove an ineffective assistance of counsel … claim under [the] well-established standards [of

---

**13** The court noted: "[F]or noncitizens, '[t]here is a clear difference … between facing possible deportation and facing certain deportation,' " and " '[w]arning of the possibility of a dire consequence is no substitute for warning of its virtual certainty. As Judge Robert L. Hinkle explained, "Well, I know every time that I get on an airplane that it *could* crash, but if you tell me it's *going to* crash, I'm not getting on." ' " (*Patterson*, *supra*, 2 Cal.5th at p. 896, italics added.)

*Strickland*],” applying its definitions of error and prejudice. (*Mejia, supra,* 36 Cal.App.5th at p. 861; see *People v. Camacho* (2019) 32 Cal.App.5th 998, 1005 (*Camacho*); *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 75 (*Ogunmowo*) [“Ineffective assistance of counsel that damages a defendant’s ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea, if established by a preponderance of the evidence, is the type of error that entitles the defendant to relief under section 1473.7”].)

However, this interpretation was not what the Legislature had intended, and it recognized that even under the new statute, defendants who had been misadvised of immigration consequences were still losing their motions. (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1067 (*Ruiz*).) To correct the misinterpretation, “[t]he Legislature passed Assembly Bill No. 2867 (2017–2018 Reg. Sess.) to ‘provide clarification to the courts regarding Section 1473.7’ to ‘ensure uniformity throughout the state and efficiency in the statute’s implementation.’ (Assem. Bill No. 2867 (2017–2018 Reg. Sess.) ch. 825, § 1(b).) It intended to change the law to give defendants a *new right* to prevail using an easier new standard to retroactively challenge invalid prior convictions.” (*Ibid.*)

### 2.    Section 1473.7’s Amendment

The result was an amendment to section 1473.7, which became effective January 1, 2019, while defendant’s appeal was pending in this court. The amendment added the following sentence to section 1473.7, subdivision (a)(1): “A finding of legal invalidity *may, but need not, include a finding of ineffective assistance of counsel*.” (Stats. 2018, ch. 825, § 2, p. 5313, italics added.) The new clarification dispensed with the perceived requirement that courts must apply the *Strickland* standards of error and prejudice.[14] (*Camacho, supra,* 32 Cal.App.5th at pp. 1005–1006.) Consequently, “the

---

**14**    Because this amendment merely clarified existing law, it did not create a new law for retroactivity purposes. (See *Camacho, supra,* 32 Cal.App.5th at pp. 1006–1009.)

2019 version of section 1473.7 authorizes a substantially different motion than the 2017 version."[15] (*Ruiz, supra,* 49 Cal.App.5th at p. 1067.)

### a. Error

Now, to show error, a defendant need not show, as under *Strickland,* that his plea counsel committed error by providing deficient representation that fell below an objective standard of reasonableness under prevailing professional norms. (*Camacho, supra,* 32 Cal.App.5th at p. 1008.) Instead, he may show plea counsel's error without showing that counsel's representation fell below *Strickland*'s standard, or he may simply show *his own subjective error* in not knowing or understanding his plea's actual or potential adverse immigration consequences. (*Camacho,* at pp. 1008–1009; *Mejia, supra,* 36 Cal.App.5th at p. 871.)

### b. Prejudice

Furthermore, "[b]ecause the errors need not amount to a claim of ineffective assistance of counsel, it follows that courts are not limited to the *Strickland* test of prejudice, whether there was reasonable probability of a different [i.e., more favorable] outcome in the original proceedings absent the error." (*Camacho, supra,* 32 Cal.App.5th. at p. 1009; see *id.* at p. 1010.) Rather, a defendant need only show it is reasonably probable that had he understood the immigration consequences of his plea, he *would not have pled* but would instead have either tried to negotiate an immigration-safe alternative plea or gone to trial to defend against the charges. (See *Jae Lee v. United States* (2017) 582 U.S. __ [137 S.Ct. 1958, 1967] (*Lee*) [defendant "adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation"]; see also *People v. Martinez, supra,* 57 Cal.4th at p. 567 ["To establish prejudice, defendant must show that he would not have entered into the

---

**15** We note that the amendment to section 1473.7 also made various other changes to the statute, such as "substantially enlarg[ing] the time periods in which to bring these motions. (§ 1473.7, subd. (e)(1).)" (*Ruiz, supra,* 49 Cal.App.5th at p. 1067.)

plea bargain if properly advised—a decision that might be based either on the desire to go to trial or on the hope or expectation of negotiating a different bargain without immigration consequences"]; *Mejia*, *supra*, 36 Cal.App.5th at p. 862 [defendant may show that "had he understood the [plea's] consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges"]; *Mejia*, at p. 871 [defendant may show "a *reasonable probability* that [he] would not have pleaded guilty—and would have risked going to trial (even if only to figuratively throw a 'Hail Mary')—had [he] known that the guilty plea would result in mandatory and dire immigration consequences"].)

Even before section 1473.7's amendment, courts had begun to recognize that prejudice could be shown by evidence of a defendant's significant ties to this country—in other words, evidence supporting the inference that the defendant would not have pled had he understood he would lose those ties as a consequence. In *Lee*, *supra*, 137 S.Ct. 1958, for example, the United States Supreme Court detailed the defendant's ties to this country and observed that a defendant's decision whether to accept a plea can involve considerations other than "the likelihood of success at trial." (*Id*. at p. 1966.) The decision "also involves assessing the respective consequences of a conviction after trial and by plea. [Citation.] When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." (*Ibid*.) "There is no reason to doubt the paramount importance [a defendant places] on avoiding deportation. Deportation is always 'a particularly severe penalty,' [citation], and we have 'recognized that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence …." ' " (*Id*. at p. 1968.)

In *Lee*, the defendant "had lived in the United States for nearly three decades, had established two businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents—both naturalized American citizens." (*Lee*, *supra*, 137 S.Ct. at p. 1968.) Based on these ties, the defendant declared that "avoiding

27.

deportation was *the* determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He … would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." (*Id*. at p. 1967.)

The *Lee* court concluded the defendant's "claim that he would not have accepted a plea had he known it would lead to deportation [was] backed by substantial and uncontroverted evidence," and thus he had "demonstrated a 'reasonable probability that, but for [his plea] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "[16] (*Lee*, *supra*, 137 S.Ct. at p. 1969.) The court reversed and remanded for further proceedings. (*Ibid*.)

In *Ogunmowo*, *supra*, 23 Cal.App.5th 67, the defendant supported his section 1473.7 motion with a declaration in which he averred: " 'I would have rejected the plea agreement had I known I could be subject to immigration sanctions. I moved my life 7,700 miles across the globe from Lagos, Nigeria to Los Angeles in 1980. I became a lawful permanent resident in 1988. I was not about to accept the possibility of deportation or inability to maintain my immigration status to be in the United States. I had already established my life in the United States.' He also stated: 'Important to me was the fact that my attorney told me I would not face any immigration consequences because of my status as a lawful permanent resident of the United States. I relied upon this incorrect information in deciding to plead guilty in this case.' [He] asserted he

---

**16** The *Lee* court also stated: "We cannot agree that it would be irrational for a defendant in Lee's position to reject the plea offer in favor of trial. But for his attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly. If deportation were the 'determinative issue' for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that 'almost' could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time. [Citation.] Not everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so." (*Lee*, *supra*, 137 S.Ct. at pp. 1968–1969.)

'would have opted to go to trial if [he] knew that [his] decision to plead guilty would mean automatic deportation and no chance at ever being a [United States] citizen.' " (*Ogunmowo*, at p. 73.)  On appeal, the court concluded the defendant had met his burden to establish prejudicial error by a preponderance of the evidence; the court reversed and directed the trial court to permit the defendant's plea to be withdrawn.  (*Id*. at p. 81.)

### 3. *Post-amendment Cases:* **Camacho** *and* **Mejia**

The recent cases of *Camacho* and *Mejia*—which applied the post-amendment standards to pre-amendment motions—are instructive here.  In *Camacho*, the defendant pled no contest in 2009 to possession of marijuana for sale.  (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1000–1001.)  In his declaration supporting his 2017 section 1473.7 motion to vacate his conviction, the defendant stated he had been living in the United States since he was two years old, was married to a United States citizen, and had two young children.  When he entered his plea, he "heard the judge say the conviction *could* lead to deportation," but he relied on his plea counsel's statement that "everything would be fine" if he pled.  (*Camacho*, at p. 1001, italics added.)

At the hearing on his motion, the defendant testified he had not left the country since he arrived at age two and he had been married to his wife for 12 years.  He said his plea counsel did not tell him the marijuana conviction "*would* subject him to mandatory deportation … or … *would* prevent him from ever becoming a legal permanent resident." (*Camacho*, *supra*, 32 Cal.App.5th at p. 1002, italics added.)  His plea counsel testified he could not remember discussing immigration consequences with the defendant, but was sure he had mentioned that the conviction *could* subject him to deportation because counsel discussed immigration consequences with all his clients.  (*Ibid*.)  The trial court, however, denied the defendant's motion for failure to prove ineffective assistance of counsel.  (*Id*. at pp. 1003–1004.)

While the defendant's appeal was pending, section 1473.7's amendment took effect.  On appeal, the *Camacho* court reviewed the case for error under the amended

29.

law's definition—whether the defendant had demonstrated *his own misunderstanding* of the immigration consequences. (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1008–1009.) The court concluded the defendant's declaration and testimony had demonstrated his "own error" in "not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States." (*Id*. at p. 1009.) The defendant's claim that he misunderstood the consequences was "supported by his [plea counsel's] undisputed testimony that he told [the] defendant only that the charge *could* subject him to deportation." (*Ibid*.)

As for prejudice, the *Camacho* court concluded the defendant had demonstrated prejudice based on his strong ties to this country that supported an inference he "would never have entered the plea if he had known that it would render him deportable." (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1011–1012.) The court reversed the trial court's order denying the defendant's motion and remanded with instructions to vacate the conviction. (*Id*. at pp. 1004, 1012.)

In *Mejia*, as in *Camacho*, the amendment to section 1473.7 took effect while the defendant's appeal was pending. The defendant had pled guilty to three drug offenses in 1994. (*Mejia*, *supra*, 36 Cal.App.5th at p. 863.) In his declaration supporting his 2017 section 1473.7 motion, he stated his plea counsel had never informed him of the immigration consequences of his plea, even though their conversations occurred through a Spanish language interpreter. The defendant came to the United States when he was 14 years old. (*Id*. at p. 863.) He had been living in the United States for eight years with his wife and infant son, his mother, and his six siblings. Only his father remained in Mexico, and he had recently died. (*Id*. at p. 864.) The defendant declared: " 'Had I known that the charges *would* result [i]n imminent deportation and *would* have precluded any defense to deportation, I would have chosen to fight the charges or try to negotiate a result that would not destroy my chances of staying in the United States. By this point, I had already spent 8 years in the United States and I already considered this country my

30.

home.  I never would have simply accepted responsibility if I knew I'd be deported.' "
(*Id*. at pp. 863–864, italics added.)  As in *Camacho*, the trial court denied the motion
because the defendant had not demonstrated ineffective assistance of counsel.  (*Mejia*, at
p. 865.)

On appeal, the *Mejia* court explained that the newly amended section 1473.7
allowed a noncitizen defendant to vacate a guilty plea if he " 'did not understand the true
implications of the plea deal before accepting it' " and " 'suffered prejudice' " as a result
of his misunderstanding.  (*Mejia*, *supra*, 36 Cal.App.5th at pp. 865–866.)  "The key to the
statute is *the mindset of the defendant and what he or she understood—or didn't
understand*—at the time the plea was taken, and not whether their attorney technically
provided [ineffective assistance of counsel]."  (*Id*. at p. 866, italics added.)  Under the
amendment, a defendant could obtain relief by demonstrating his " '*own error* in … not
knowing that his plea would subject him to mandatory deportation and permanent
exclusion from the United States,' " and the reasonable probability that he would not
have pled if he had known.  (*Id*. at p. 871.)

As in *Camacho*, the *Mejia* court reviewed the case under the new standards
 and concluded the defendant had shown he did not " 'meaningfully understand' " the
mandatory deportation consequences of his conviction when he pled.  (*Mejia*, *supra*,
36 Cal.App.5th at p. 872.)  The defendant's initialing of the immigration advisement on
the plea form did not change the court's conclusion; the subjective standard asked
whether the defendant actually and meaningfully understood the immigration
consequences.  (*Ibid*.)  As for prejudice, the court concluded the evidence of the
defendant's strong ties to this country demonstrated a reasonable probability he would
not have pled but would instead have risked going to trial.  (*Id*. at pp. 872–873.)  Thus, he
had "affirmatively established a 'prejudicial error' within the meaning of section 1473.7,
subdivision (a)(1)."  (*Id*. at p. 873.)

The *Mejia* court explained: "In sum, we have taken into account section 1473.7 as amended, and have considered it within the broader context of the Legislature's implied and explicit intent regarding the treatment of noncitizen criminal defendants. Under that analytical framework, [the defendant] plainly established a reasonable probability that he would not have pleaded guilty and likely would have taken his chances at trial had he meaningfully understood the certain and dire immigration consequences of his 1994 guilty pleas." (*Mejia*, *supra*, 36 Cal.App.5th at p. 874.) The court reversed and remanded to allow the defendant to withdraw his pleas. (*Ibid*.)[17]

## II.    Analysis

In this case, we cannot review whether defendant established a "prejudicial error" under section 1473.7, as the courts did in *Camacho* and *Mejia*, because here the trial court did not consider the merits of defendant's motion. Instead, the court denied defendant an evidentiary hearing on the merits of his section 1473.7 motion because it misunderstood the basis of the motion, despite current counsel's best efforts to explain to the court that the motion was based on section 1473.7 and therefore differed from the prior motion. Defendant is entitled to a hearing on the merits of his motion under the applicable law. (§ 1473.7, subd. (d) ["[a]ll motions shall be entitled to a hearing"]; *Ruiz*,

---

[17]    Recently, in *People v. Jung* (2020) 59 Cal.App.5th 842, the court relied on *Mejia* to conclude the defendant met her burden of proving prejudicial error under section 1473.7, based mostly on her declaration demonstrating her misunderstanding and providing substantiating contemporaneous evidence of her ties to this country. (*Jung*, at pp. 846, 858.) The court concluded she "did not meaningfully understand the immigration consequences of her pleas" (*id*. at p. 858), even though plea counsel testified that he thoroughly advised all his clients about plea consequences and would have advised the defendant that her guilty plea would lead to her deportation (*id*. at p. 849). The court stressed that "[t]he question" presented by section 1473.7 "was *not* what [plea counsel] told [the defendant], but what [the defendant's] understanding was about the immigration consequences of her pleas." (*Jung*, at p. 858, italics added.) Defendant satisfied section 1473.7 by showing her " ' "own error in … not knowing that [her] plea would subject [her] to mandatory deportation and permanent exclusion from the United States." ' " (*Jung*, at pp. 858–859.) The trial court erred by focusing "on whether a third party caused [the defendant] to suffer prejudice rather than considering [the defendant's] mindset when pleading guilty." (*Id*. at p. 859.)

32.

*supra*, 49 Cal.App.5th at p. 1070 ["Preventing [the defendant] from having a hearing on the merits of her motion would undermine [amended § 1473.7's] legislative intent and would condone a facially invalid advisement without providing a remedy for relief. '[A] statute should not be construed as creating a right without a remedy' "].)[18] Thus, we will reverse the trial court's order and remand the matter for an evidentiary hearing on the merits, including consideration of the declarations and testimony (subpoenaed, if necessary). (See *Ruiz*, at p. 1070.) The trial court shall consider the matter in light of the 2019 amendment to section 1473.7 (Stats. 2018, ch. 825, § 2, p. 5313) and the case law interpreting it.

## DISPOSITION

The trial court's order denying defendant's motion to vacate the conviction under section 1473.7 is reversed. The matter is remanded for a full hearing on the merits of the motion.

HILL, P.J.

WE CONCUR:

DETJEN, J.

SNAUFFER, J.

---

**18** "The Legislature did not intend that motions brought under the new statutory standard would be denied because courts had denied earlier motions to vacate brought on different grounds. (See, e.g., ... *Ogunmowo*[, *supra*,] 23 Cal.App.5th [at pp.] 70, fn. 2, 80 [the court denied motions to vacate a 1989 conviction in 2009 and 2014 with a finding it had advised defendant about 'possible immigration consequences,' but defendant later prevailed on a § 1473.7 motion to vacate the 1989 conviction based on his [plea] counsel's ineffective assistance in not knowing the mandatory immigration consequences].)" (*Ruiz*, *supra*, 49 Cal.App.5th at p. 1069.)